IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

DYLAN CARTER,

    Plaintiff,

v.

SETH JENSEN,
RICHARD RUIZ,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Dylan Carter, by and through his attorneys of the Civil Rights Litigation Group, hereby submits this Complaint and Jury Demand, and alleges as follows:

### INTRODUCTION

1. This civil rights case involves the unlawful arrest of Dylan Carter after Pueblo Police Officers sought and obtained a warrant to arrest Dillon Wade Lee for domestic violence, and officers confused Mr. Carter for Mr. Lee. Although their first names are phonetically similar, the names are spelled differently and refer to two different people with different identifying information. The information necessary to identify the correct suspect and exclude Mr. Carter was readily available but ignored, resulting in the wrong person being arrested and jailed for two days.

2. Mr. Carter seeks justice for the lost liberty, emotional harm, and economic injuries caused by Defendants' recklessness. He also seeks punitive damages against the individual officers to punish and deter the type of carelessness that contributed to the mistaken identity arrest.

## JURISDICTION AND VENUE

3. Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983 and the Constitution of the United States.

4. Plaintiff brings his state law claims pursuant to C.R.S. § 13-21-131 and the Colorado Constitution.

5. This Court possesses subject matter jurisdiction over the federal claims under 28 U.S.C. §1331.

6. This Court possesses supplemental subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all events alleged in this matter occurred in the State of Colorado.

8. Jurisdiction for Plaintiff's claim for attorney fees and costs is established under 42 U.S.C. § 1988 and C.R.S. § 13-21-131(3).

## PARTIES

9. Plaintiff Dylan Carter was a resident of the State of Colorado or Ohio at all times relevant to the claims presented in this Complaint.

10. Defendant Seth Jensen was employed as a police officer by the Pueblo Police Department and acted under color of state law at all times relevant to the claims presented in this Complaint.

11. Plaintiff brings his claims against Defendant Jensen in his individual capacity.

12.     Defendant Richard Ruiz was employed as a police officer by the Pueblo Police Department and acted under color of state law at all times relevant to the claims presented in this Complaint.

13.     Plaintiff brings his claims against Defendant Ruiz in his individual capacity.

## FACTUAL ALLEGATIONS

14.     Plaintiff incorporates by reference, as though fully set forth herein, every allegation contained in the Complaint's preceding Paragraphs.

### *The Investigation of "Dillon Wade Lee"*

15.     On April 17, 2021, Officers Jensen and Shipp of the Pueblo Police Department responded to a residence due to a call for a domestic violence disturbance.

16.     The reporting party told the officers that her ex-boyfriend, Dillon Wade Lee, broke into her home.

17.     The reporting party provided Defendant Officer Jensen her ex-boyfriend's name and estimated birth date (12/17/1992), but she also clarified that she was not sure that the birth date she provided was accurate. She informed Defendant Jensen that she thought the birth date she provided was within a year of her own in 1991, but that she had not seen or heard from this person in years.

18.     The suspect's birth year is 1991.

19.     The reporting party told the officers that she and her ex-boyfriend had one child together.

20.     The reporting party told the officers that her ex-boyfriend resided in Boone, Colorado.

21.     The reporting party also told the officers that her ex-boyfriend drove a white Chevy truck with a silver toolbox in the bed of the truck.

22. The investigating officers did not ask for an accurate spelling of his name or for additional details that would help them verify his identity.

23. None of the officers asked the reporting party for any physical description of her ex-boyfriend, such as height, weight, eye color, hair color, tattoos, or piercings.

24. None of the officers asked the reporting party for her ex-boyfriend's phone number, last known address, or driver's license number.

25. None of the officers provided the reporting party a picture of any person named Dylan Lee, which the officers could have obtained from DMV records.

26. Correct identifying information for Dillon Wade Lee, including his residential address in Boone, Colorado, his registration of a white Chevy pickup, his offspring being related to the reporting party, etc. was readily available to the officers through a variety of law enforcement computer tools, including NCIC/CCIC, DMV records, and local law enforcement databases.

27. Defendant Jensen failed to consult, review, or compare information from those resources, and thereby failed to take reasonable steps to accurately confirm the identity of the person he was looking for.

28. Defendant Jensen filled out a domestic violence form and wrote down "Dylan Lee" on the form.

29. Defendant Jensen conducted a CCIC/NCIC search of "Dylan Lee," with a birth date of December 17, 1992, to obtain the physical characteristics he included in his reports.

30. The CCIC/NCIC search provided the following information:

- Height:   5'10"
- Weight:   243 lbs.
- Hair:     Brown
- Eyes:     Brown

4

31. The CCIC / NCIC search of Dylan Lee did not produce results for a person that lived in Boone, Colorado, nor a person that had a white Chevy pickup truck registered in his name.

32. This would have informed a reasonable officer who had taken reasonable steps to verify someone's identity that he had looked up the wrong person.

33. The CCIC/NCIC search produced a driver's license number for "Dylan Lee."

34. Defendant Jensen input the results for a different person from his CCIC/NCIC search into his reports, without confirming, checking, or cross referencing the information provided by the reporting party.

35. Officers Jensen and Shipp left the residence and submitted their reports.

36. Officers Jensen thereafter requested that another officer follow up to submit a warrant application using the information they submitted and represented comprised probable cause to arrest "Dylan Lee."

37. On May 29, 2021, Defendant Officer Ruiz conducted a follow-up investigation for the domestic violence disturbance on April 17, 2021, in order to submit a warrant request.

38. Defendant Ruiz viewed the body camera footage that recorded Officers Jensen and Shipp responding to a call about the residence on April 17, 2021.

39. While completing his report, Defendant Ruiz also erroneously identified the suspect as "Dylan Lee."

40. Defendant Ruiz conducted a search of "Dylan Lee," with a birth date of December 17, 1992, in CCIC/NCIC, to obtain physical characteristics to include in his reports.

41. The CCIC/NCIC search produced the same results as it did for Defendant Jensen when he searched for "Dylan Lee."

42. Defendant Ruiz used the information he obtained from the CCIC/NCIC search in his reports for the domestic violence investigation.

43. Similar to Officer Jensen, the correct identifying information for Dillon Wade Lee, including his residential address in Boone, Colorado, his registration for a white Chevy pickup, etc., was readily available to Defendant Ruiz through a variety of law enforcement computer tools, including NCIC/CCIC, DMV records, and local law enforcement software.

44. But Defendant Ruiz relied on and used erroneous information from his CCIC/NCIC search in his reports, without confirming, checking, or cross-referencing the information the reporting party provided.

45. Defendant Ruiz failed to correctly identify the correct suspect and instead used information belonging to "Dylan Lee."

46. The reporting party did not provide a physical description of her ex-boyfriend to any of the officers; the information they used came directly from the officers' searches for "Dylan Lee" in CCIC/NCIC.

47. In addition to having different birth dates, name spellings, and physical characteristics, the suspect had a different driver's license number and different Social Security number than Mr. Carter.

48. After reviewing the body camera footage, conducting a CCIC/NCIC search for "Dylan Lee," and using the results of the CCIC/NCIC search in his official reports, Defendant Ruiz completed and submitted an arrest warrant affidavit.

49. The arrest warrant affidavit represented, under oath, that there was probable cause to arrest Dylan Lee for harassment, criminal mischief, and domestic violence.

50. Based on the information Defendant Ruiz included in the arrest warrant affidavit and his assurances that he had verified the information provided was accurate before submitting the affidavit, a state court judge issued an arrest warrant for Dylan Lee.

### The Arrest of "Dylan Spencer Carter"

51. Plaintiff Dylan Spencer Carter has lived in Ohio during the past few years.

52. Mr. Carter's birth surname was "Lee," but he changed his last name after getting married.

53. On April 30, 2023, while enjoying a night out at Dave & Buster's, Mr. Carter was arrested in Hillard, Ohio, pursuant to the warrant that Defendant Ruiz requested and obtained using erroneous information on May 29, 2021.

54. Mr. Carter informed the arresting officer that he had the wrong person, but the arresting officer told Mr. Carter that the warrant information matched Mr. Carter's physical description and the information in NCIC.

55. For the first time in his life, Mr. Carter was arrested and taken to jail. He spent two days in jail, losing two days of his liberty, before being released.

56. After being released from jail, Mr. Carter hired a criminal defense attorney to defend him against the government's efforts to prosecute him for crimes he could not have committed.

57. On September 27, 2024, an investigator contacted the reporting party to verify the identity of the ex-boyfriend that broke into her home on April 21, 2021. The investigator sent a copy of Mr. Carter's driver's license photo to the reporting party.

58. On October 25, 2024, the reporting party submitted a signed affidavit stating that "the Dylan S. Carter in the driver's license is not my ex-boyfriend." She further stated that her ex-

7

boyfriend's name is "Dillon Wade Lee," and that he "may have been arrested and fingerprinted in Pueblo County at some point."

59. Dillon Wade Lee and Dylan Spencer Carter do not resemble one another, and no reasonable person would confuse them with each other.

60. On November 12, 2024, after reviewing the reporting party's affidavit, the District Attorney filed a Motion to Dismiss all charges against Mr. Carter.

61. Mr. Carter's criminal case was dismissed on January 9, 2025.

62. The actual suspect, Dillon Wade Lee, was not arrested or prosecuted for the incident on April 17, 2021.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983, Fourth Amendment
### C.R.S. § 13-21-131, Article II §7
### *Unlawful Arrest*
### (All Defendants)

63. Plaintiff incorporates by reference, as though fully set forth herein, every allegation contained in the Complaint's preceding Paragraphs.

64. When Defendant Jensen responded to the residence on April 17, 2021, he did not make the reasonable effort to confirm the identity of the reporting party's ex-boyfriend that a reasonable officer would have made under the same circumstances.

65. Defendant Jensen did not ask basic identifying questions, such as, the suspect's height, weight, hair color, eye color, phone number, or last known address.

66. Defendant Jensen did not ask the basic question: How do you spell your ex-boyfriend's name?

67. Defendant Jensen did not ask for the ex-boyfriend's middle name, nor did the reporting party provide the suspect's middle name.

8

68. Instead, Defendant Jensen decided to use an unverified name spelling, and he wrote down "Dylan Lee" in his reports.

69. Defendant Jensen searched for a "Dylan Lee" in CCIC/NCIC and used the height, weight, hair color, eye color, and middle name he obtained from the search results in his reports. Defendant Jensen did not attempt to confirm with the reporting party whether the information from the CCIC/NCIC search described the suspect.

70. Defendant Ruiz relied on Defendant Jensen's body camera footage, representations made by the officers in reports, and information he looked up when drafting the arrest warrant affidavit.

71. Defendant Ruiz did not speak to Defendant Jensen, Officer Shipp, or the reporting party before submitting his arrest warrant affidavit.

72. Instead, Defendant Ruiz searched for a "Dylan Lee" with a birth date of December 17, 1992, in CCIC/NCIC and selected a person from the results that appeared on his screen.

73. Defendant Ruiz used the results from the CCIC/NCIC search in his reports and sought a warrant for the person matching the description of the search results.

74. Defendants Jensen and Ruiz failed to take reasonable steps to determine whether anyone who has ever spelled his name "Dylan Spencer Carter" broke into the reporting party's home on April 17, 2021.

75. Defendants failed to take basic investigatory steps to verify the identity of the person accused of a crime. Instead, they sought a warrant for a person with a phonetically similar name.

76. Reasonable investigators know that different people across the country can have similar sounding names, similar dates of birth. Therefore, to ensure they do not violate the

9

constitutional rights of others, officers must take reasonable steps to verify the identity of people suspected of crimes before asserting they committed a crime and/or should be arrested.

77. Reasonable officers know that identifying information collected from an unreliable or "unsure" source must be checked, cross-referenced, and verified before they may lawfully rely on it to assert probable cause and before confirming that the person may be deprived of his liberty and lawfully arrested.

78. A reasonable and lawful investigation would have revealed that the suspect has a different birth date, name spelling, physical characteristics, driver's license number, and social security number.

79. The Defendants failed to conduct a reasonable investigation and were deliberately indifferent to the probability that they confused the person they were looking for with another person.

80. When an investigator finally asked the reporting party to spell her ex-boyfriend's name and confirm his identity in a DMV photo, the reporting party unequivocally stated that Mr. Carter was not the suspect, their first names were spelled differently, they had different middle names, and they had different last names. They look nothing alike and are, in fact, different people.

81. As a result, Defendants Jensen and Ruiz caused Mr. Carter's arrest without probable cause.

82. Defendant Jensen's and Defendant Ruiz's actions under color of state law deprived Mr. Carter of the rights, privileges, liberties, and immunities secured by the Constitution of the United States and the Colorado Constitution, including the right to be free from arrests without probable cause.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983, Fourth Amendment
### C.R.S. § 13-21-131, Article II §7
### *Franks* Claim
### (All Defendants)

83. Plaintiff incorporates by reference, as though fully set forth herein, every allegation contained in the Complaint's preceding Paragraphs.

84. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that an officer violates the Fourth Amendment where the officer knowingly or with reckless disregard for the truth makes false statements or omissions in a warrant affidavit, and where the false statements or omissions are necessary to the finding of probable cause. Here, Defendants' statements and omissions were made with, at minimum, reckless disregard for the truth, as evidenced by their failure to take basic investigative steps that would have revealed the true identity of the suspect.

85. Defendants' unreasonable and reckless investigation is the reason a state court judge was fooled into unlawfully issuing an arrest warrant for "Dylan Lee" without probable cause.

86. Defendant Jensen falsely reported that the suspect's name was "Dylan Lee." The reporting party never provided this spelling, and Defendant Jensen never attempted to confirm whether this was the correct spelling.

87. If he had, he would have learned the suspect's name was "Dillon Wade Lee."

88. Defendant Jensen falsely reported that probable cause existed to arrest "Dylan Lee" for first degree criminal trespass, criminal mischief, harassment, and domestic violence.

89. Additionally, Defendant Jensen falsely reported the physical characteristics of the suspect. Defendant Jensen conducted a CCIC/NCIC search of "Dylan Lee" and inputted the results from his search into his reports. Defendant Jensen falsely stated that the suspect was 5'10" tall, 243

11

pounds, had brown hair, and had brown eyes. Defendant Jensen also falsely stated that the suspect's birth date was December 17, 1992.

90. Defendant Jensen also included in his reports the driver's license number from the CCIC/NCIC search for "Dylan Lee."

91. Defendant Jensen omitted the following material information from his reports:

- The suspect's first name was "Dillon."
- The suspect's middle name was "Wade."
- The suspect's name was not "Dylan Spencer Carter" or "Dylan Lee."
- The reporting party did not provide a spelling of her ex-boyfriend's name, nor did any officer ask for the spelling.
- The suspect was born in 1991, and Mr. Carter was born in 1992.
- The reporting party did not confirm the identity of her ex-boyfriend in a picture, nor did any officer provide a picture of any suspect.
- The reporting party did not provide the suspect's height, weight, eye color, hair color, phone number, or last known address, nor did any officer request this information from her.
- "Dylan Lee" has never had a white Chevy truck registered in his name.
- "Dylan Lee" has never resided in Boone, Colorado.

92. Similarly, Defendant Ruiz falsely reported that probable cause existed to arrest "Dylan Lee" for harassment, criminal mischief, and domestic violence.

93. Defendant Ruiz falsely reported the physical characteristics of the suspect. Defendant Ruiz conducted a CCIC/NCIC search of "Dylan Lee" and inputted the results from his search into

his reports and arrest warrant affidavit. Defendant Ruiz falsely stated that the suspect was 5'10" tall, 243 pounds, had brown hair, and had brown eyes. Defendant Ruiz also falsely stated that the suspect's birth date was December 17, 1992.

94. Defendant Ruiz omitted the following material information from his reports and arrest warrant affidavit:

- The suspect's first name was "Dillon."
- The suspect's middle name was "Wade."
- The suspect's name was not "Dylan Spencer Carter" or "Dylan Lee."
- The reporting party did not provide a spelling of her ex-boyfriend's name, nor did any officer ask for the spelling.
- The suspect was born in 1991, and Mr. Carter was born in 1992.
- The reporting party did not confirm the identity of her ex-boyfriend in a picture, nor did any officer provide a picture of any suspect.
- The reporting party did not provide the suspect's height, weight, eye color, hair color, phone number, or last known address, nor did any officer request this information from her.
- "Dylan Lee" has never had a white Chevy truck registered in his name.
- "Dylan Lee" has never resided in Boone, Colorado.

95. If Defendants Jensen and Ruiz had excluded the false information and included the omitted information, no warrant would have been issued. Defendants' false statements and omissions mislead the state court judge into concluding probable cause existed to arrest Mr. Carter for the crimes committed on April 17, 2021.

13

96. Defendants' careless investigation and reckless pursuit of a warrant for the wrong person caused Mr. Carter to be arrested a thousand miles away from Colorado, over two years after the date of the incident.

97. It took three and a half years for an investigator to take the most basic investigatory step imaginable: ask the victim to spell her ex-boyfriend's name and confirm his identity in a picture. On October 25, 2024, officers finally asked this question, and the victim unequivocally confirmed that Mr. Carter was not the suspect and should not have been arrested. Unsurprisingly, Dillon Wade Lee and Dylan Spencer Carter are not the same person.

98. The criminal case against Mr. Carter was finally dismissed on January 9, 2025.

99. As a result of this wrongful arrest and prosecution, Mr. Carter spent two days in jail, hired a criminal defense attorney, and endured a wrongful prosecution for almost two years.

100. Such actions by Defendants Jensen and Ruiz, while acting under color of state law, deprived Mr. Carter of the rights, privileges, liberties, and immunities secured by the Constitution of the United States and the Colorado Constitution, including the right to be free from arrests without probable cause.

**WHEREFORE,** Plaintiff requests that this Court enter judgment in his favor and against all Defendants for the following relief:

a. Compensatory damages for:

   i. Loss of liberty and false imprisonment;

   ii. Emotional distress, humiliation, and mental anguish;

   iii. Economic damages, including attorney fees for criminal defense and lost wages;

   iv. Damage to reputation;

b. Punitive damages against the individual defendants in an amount sufficient to punish them for their reckless disregard of Mr. Carter's constitutional rights and to deter similar misconduct in the future;

c. Pre-judgment and post-judgment interest as allowed by law;

d. Costs, expert witness fees, and reasonable attorney fees pursuant to 42 U.S.C. § 1988 and C.R.S. § 13-21-131(3);

e. Declaratory relief stating that Defendants' actions violated Mr. Carter's constitutional rights;

f. Such other and further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 29th day of April 2025.

**s/Zachary L. Shiffler**
Zachary L. Shiffler
Ed Hopkins
Civil Rights Litigation Group
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: 720-515-6165
Fax: 720-465-1975
zach@rightslitigation.com
ed@rightslitigation.com
*Attorneys for Plaintiff*